✓ FILED
___ LODGED
___ RECEIVED

**June 28, 2005**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| In re: | Case No. 04-50516 |
|---|---|
| TERRY L. WILLIAMS, | **MEMORANDUM DECISION**[1] |
| Debtor. | **NOT FOR PUBLICATION** |

This matter came before the Court for hearings held on April 6 and June 8, 2005, on motions to assume executory contract filed by Terry L. Williams (Debtor) and for relief from stay filed by Ernest G. Oliver (Oliver). After considering the evidence, testimony and arguments presented, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

On or about September 11, 2002, Oliver prepared a Real Estate Lease, pursuant to which the Debtor would agree to lease Oliver's residential real property located at 1829 NW Forest Home Lane, Camas, Washington (Property), for a period of two years. An addendum to the Real Estate Lease, dated September 11, 2002, grants the Debtor an option to purchase and provides that $400 of the $2,000 per month lease payment will be credited toward a down

---

[1] This disposition is not appropriate for publication and may not be cited to, except when relevant under the doctrines of law of the case, res judicata or collateral estoppel.

MEMORANDUM DECISION - 1

payment at the maturity of the lease. There is no evidence that the Real Estate Lease or addendum was signed by the parties. The Debtor, however, took possession of the Property and made payments approximating the lease payment.

On or about August 8, 2003, the parties entered into a Residential Real Estate Purchase and Sale Agreement (Purchase Agreement) that provided for the sale of the Property to the Debtor for a purchase price of $279,000, with monthly payments of $1,930.37. The Purchase Agreement was prepared by Oliver and provided for the closing date to be "ASAP." Pursuant to the Purchase Agreement, Oliver was to pay all closing costs. Real estate taxes for 2003 were prorated, however, requiring Oliver to pay the real estate taxes to the date of closing and the Debtor from closing to the end of the real estate tax year.

An escrow was opened by Oliver at Fidelity National Title, and a preliminary commitment for title was issued effective September 3, 2003. The title company's investigation disclosed a lien claim by the State of Washington's Department of Social and Health Services against the Debtor for unpaid child support in the amount of $1,050. The Debtor failed to deposit funds to cover his portion of the 2003 real estate taxes or discharge the child support lien. The escrow was closed on January 3, 2005, due to inactivity.

On July 19, 2004, the Debtor executed an Application for Rental & Rental Agreement (Rental Agreement), providing for a month-to-month tenancy on the Property. Communications between the parties in August, 2004, indicate that the Debtor was attempting to locate a third party for the purchase of the Property, who would then sell it back to him on a contract. In an email from the Debtor to Oliver, the Debtor indicated that if the purchase fell through, he would vacate the Property by September 15, 2004.

MEMORANDUM DECISION - 2

On or about August 13, 2004, Oliver delivered to the Debtor a Notice to Vacate Premises indicating that the tenancy would terminate as of September 15, 2004. When the Debtor failed to vacate the premises, an unlawful detainer action was commenced in Clark County Superior Court. The Debtor filed an Answer, Counterclaim and Action for Quiet Title essentially seeking specific performance. On October 22, 2004, an Order for Writ of Restitution was signed and a Writ of Restitution was executed. Execution of the writ was postponed upon receipt of $6,100 from the Debtor. Correspondence by former counsel for Oliver to counsel for the Debtor dated October 28, 2004, indicated Oliver's continued willingness to sell the Property to the Debtor and a postponement of execution of the writ for one additional week during which the Debtor was given the opportunity to "negotiate a comprehensive, complete, written purchase and sale agreement with Mr. Oliver on such terms as may be agreed, with the assistance of counsel, and to **fully perform** everything thereunder." (Oliver Ex. 8).

On November 5, 2004, the Debtor filed a voluntary Chapter 13 petition, staying execution of the Writ of Restitution. The Debtor's original Chapter 13 Plan (Plan) provided for initial monthly payments of $693 and stated his intent to assume the contract with Oliver. The Plan also provided for monthly payments to Oliver of $1,930.37, to be paid outside of the Plan. A Second Amended Plan was filed on April 29, 2005, that proposed monthly plan payments of $3,131, and treated Oliver as a secured claim to be paid through the Second Amended Plan. The Debtor also proposed to sell the Property on or before August, 2007, "if necessary, to pay all allowed administrative, secured, priority and general unsecured claims." The confirmation hearing on the Debtor's Second Amended Plan has been continued to July 5, 2005.

MEMORANDUM DECISION - 3

On December 22, 2004, the Debtor filed a Motion to Assume Executory Contract with Ernest G. Oliver, and Oliver filed a Motion for Relief from Stay § 362(d) on December 23, 2004. The Court continued both matters for an evidentiary hearing.

**CONCLUSIONS OF LAW**

The issue presented to the Court is the legal relationship between the parties in regards to the Property as of the commencement of the Debtor's Chapter 13 case.[2] At the hearing, counsel for Oliver acknowledged that the Purchase Agreement signed by the parties on August 8, 2003, contained sufficient terms to constitute an enforceable contract under Washington State law. It is the Debtor's position that the Purchase Agreement constituted an enforceable real estate purchase agreement as of the petition date that can be assumed under his Chapter 13 Plan. Oliver contends that the Purchase Agreement terminated prepetition and that the relationship between the parties is that of landlord/tenant.

The Court concludes that a preponderance of the evidence demonstrates that the Purchase Agreement terminated prepetition. The Court basis its conclusion on several factors. Initially, although the Purchase Agreement was executed and an escrow account opened, it is undisputed that the transaction never closed nor were any closing documents executed by the parties or recorded. The Purchase Agreement itself does not contain a definite date for closing, but merely indicates that closing is to occur "ASAP." (Debtor Ex. 4) In accordance with Washington State law, "when the purchase and sale contract does not definitely fix a closing date, the court will allow a reasonable time for closing to occur." Turner

---

[2]The parties indicated at the evidentiary hearing that the sole issue to be decided by the Court in this decision is whether the Purchase Agreement terminated prepetition. Based on the Court's resolution of that issue, the parties will need to renote any other requests for relief.

MEMORANDUM DECISION - 4

v. Gunderson, 60 Wn. App. 696, 703, 807 P.2d 370, 374 (1991) (citing Duprey v. Donahoe, 52 Wn.2d 129, 135, 323 P. 2d 903 (1958)).

The record before the Court is not clear why the sale of this Property did not close. Both parties testified that they were ready, willing and able to close, but that the other party either refused or was unable to complete the transaction. The Court found Oliver's testimony on this issue to be more credible. Oliver had the financial means to close the sale. Although the Debtor submitted bank account records to indicate that he also had the funds necessary to close, his explanation for not closing is less plausible. As a buyer, if the Debtor was financially able and intended to purchase the Property, he presented no credible explanation as to why he did not deposit the necessary funds with the escrow company in order to close the transaction. Further, if the Debtor was financially able to close it is unclear why it was necessary to involve a third party to purchase the Property as late as August, 2004, who would subsequently resell it to the Debtor.

Although the Debtor is not as sophisticated as Oliver concerning real estate transactions and escrows, his experience in business demonstrate a sophistication beyond what was portrayed at the hearing. The time for closing a Purchase Agreement does not extend indefinitely. The Debtor never made the slightest attempt to close, so the escrow eventually was cancelled a year and a half after opened for inactivity.

The tax returns submitted into evidence for the Debtor do not strengthen his credibility. In 2003, the Debtor claimed $18,635 in home mortgage interest paid to Oliver on his federal income tax return. Although the Debtor admitted at the hearing that this deduction was incorrectly claimed and that the return had to be amended (that had not occurred as of the last

MEMORANDUM DECISION - 5

hearing date), the Debtor appears to characterize this relationship whether it be buyer/seller, mortgagee/lender, landlord/tenant, for whatever purpose suits him at the time.

A preponderance of the evidence indicates that the Purchase Agreement was no longer an enforceable agreement by July or August, 2004. In July, 2004, the Debtor signed a Rental Agreement establishing a month-to-month tenancy on the property. The weight of the evidence indicates that the Rental Agreement superseded the Purchase Agreement and established a new relationship between the parties. The Debtor's explanation that he felt pressured to enter into the Rental Agreement is not concluded to be credible. None of the Debtor's actions within this period of time are consistent with his position that the August, 2003, Purchase Agreement was still enforceable between the parties. For instance, in an August 5, 2004 email from the Debtor to Oliver, the Debtor communicated several repairs on the Property that he wanted Oliver to remedy. This is consistent with a landlord/tenant relationship, rather than an ownership interest. In a subsequent August, 2004, email from the Debtor to Oliver, the Debtor indicated that he was trying to negotiate a deal where a third party (Redden) would purchase the Property and subsequently resell it to the Debtor in a privately financed sale. Again, this statement is not consistent with the theory that the August, 2003, Purchase Agreement still governs the relationship between the parties. Even more indicative of the relationship between the parties at this point is a statement made by the Debtor in this same email that, "[t]he bottom line is, if the deal that Redden and I agreed to falls through I'll move out by the 15th of [S]ept. and you can do what you want with this place." (Oliver Ex. 6) There is no evidence that the Debtor was able to negotiate such a deal nor did he move out by the 15th as promised. Consistent with Oliver's position, he subsequently served on the Debtor a Notice to Vacate Premises and commenced an unlawful detainer

MEMORANDUM DECISION - 6

Case 04-50516-PBS    Doc 45    Filed 06/28/05    Ent. 06/28/05 11:52:15    Pg. 6 of 7

action when the Debtor failed to relinquish possession of the Property by September 15, 2004.

In hindsight, either party would have greatly benefited from the advice of counsel throughout the contractual negotiations. Additionally, either party could have resolved any misunderstandings early on by simply confirming their positions on these issues in writing, i.e. if you fail to close by a date certain the Purchase Agreement will terminate. Taking into consideration the entire record before the Court, a preponderance of the evidence demonstrates that the Purchase Agreement did terminate prior to the Chapter 13 case filing.

DATED: June 28, 2005

_____
Paul B. Snyder
U.S. Bankruptcy Judge